UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALERTE CONGOLAISE POUR L'ENVIRONNEMENT ET LES DROITS DE L'HOMME *and* ACTIONS POUR LA PROMOTION ET PROTECTION DES PEUPLES ET ESPÈCES MENACÉS,

Applicants,

-v-

SYMBION POWER LLC,

Respondent.

25 Misc. 480 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves an application under 28 U.S.C. § 1782 for discovery in aid of a contemplated legal action in the Democratic Republic of the Congo ("DRC"). Applicants are two DRC-based non-profits—Alerte Congolaise pour l'Environnement et les Droits de l'Homme ("ACEDH") and Actions pour la Promotion et Protection des Peuples et Espèces Menacés ("APEM"). They seek authorization of subpoenas for documents and testimony from Symbion Power LLC ("Symbion"), a power engineering and construction firm operating in Africa and the Middle East. Applicants represent that such discovery is material to an administrative lawsuit they plan to bring which would challenge an auction award to Symbion of a methane gas block in Lake Kivu, DRC.

For the reasons that follow, this Court grants the Application.

## I. Factual Background

### A. Parties

ACEDH is a non-profit organization based in the DRC's North Kivu province. Dkt. 1-2 ("Ndoole Decl.") ¶ 2. It states that it is dedicated to "environmental justice, community-based

protection of conservation areas, accountable and transparent governance of land, fisheries, and energy, and access to justice," and that it advances these ends by "advocating for policy reform, providing assistance to environmental land rights advocates and strategic litigation." *Id.*

APEM is a legal and forestry non-profit organization based in Kinshasa, the DRC's capital. Dkt. 1-3 ("Mudodosi Decl.") ¶ 3. APEM seeks to "promote governance in the forestry, mining, hydrocarbons, and environmental justice sectors," which it advances through litigation and policy advocacy. *Id.*

Symbion is a power engineering and construction firm. Dkt. 17 ("Opp'n") at 6. It develops, builds, and operates various power generation, transmission and distribution projects across Africa and the Middle East. *Id.* Its headquarters and principal place of business are in New York. Dkt. 1-1 ("Mem.") at 3.

**B. Lake Kivu Auction**

In 2020, the DRC government began planning for an auction of certain methane gas blocks in Lake Kivu, a vast freshwater lake straddling the DRC-Rwanda border. Ndoole Decl. ¶ 3. According to Applicants, Lake Kivu is unique, in that its waters possess layers of trapped methane gas and carbon dioxide that present a "risk of a catastrophic explosion that could expose millions of people living on the shores of the lake to fatal gases." Mem. at 2. On July 28, 2022, the DRC's Ministry of Hydrocarbons (the "Ministry"), which governs the nation's hydrocarbon resources, officially announced it was placing three methane gas blocks, located in Lake Kivu, and 27 oil blocks for energy extraction.[1] Ndoole Decl. ¶¶ 3, 6. These gas blocks, known as the

[1] On October 14, 2024, the Ministry canceled the balance of the oil block auction due to "a lack of candidates, unreceivable bids, late bids, and inappropriate or irregular bids, and a lack of competition." Ndoole Decl. ¶ 12.

Idjwi, Makelele, and Lwandjofu blocks, are located "in a now rebel-held part of eastern DRC." *Id.* ¶ 5.

In October 2022, the Ministry reported that it had received auction bids from nine companies for the methane gas blocks. *Id.* ¶ 7.

On January 13, 2023, the Ministry selected the winning bids for the Methane gas blocks: Symbion and its third-party local affiliate Renewable Energy Development SARL ("RED") for the Makele block; Alfajiri Energy Corporation ("Alfajiri") for the Lwandjofu block; and Winds Exploration and Production LLC[2] ("Winds") for the Idjwi block. *Id.* ¶ 8. On September 9, 2023, the DRC government announced that it had signed production sharing agreements—agreements with international resource extraction companies—with Winds[3] and Alfajiri. *Id.* ¶ 9. Applicants represent that the DRC government is continuing to negotiate with Symbion to implement the production sharing agreement. *Id.* ¶ 10; Mudodosi Decl. ¶ 10.

### C. Anticipated DRC Litigation

Applicants represent that they intend to file an administrative lawsuit before the Administrative Tribunal in Kinshasa, DRC, seeking the cancellation of the methane gas block awards to Symbion, Winds, and Alfajiri. Ndoole Decl. ¶¶ 24–25; Mudodosi Decl. ¶¶ 6–7. They

---

[2] On September 9, 2024, Winds Exploration and Production, LLC changed its name to Unite Oil and Gas Production LLC ("Unite Oil"). *See* Dkt. 1-4 ("Morgenthau Decl.") at 5 (attaching a Certificate of Amendment with name change). The next day, a new, separate limited liability company, called Winds Exploration and Production LLC, was formed. *Id.* at 7 (attaching a Certificate of Formation). The Court accordingly uses "Winds" to identify the corporation formed on September 10, 2024, and identifies the corporation formerly known as Winds as "Unite Oil."

[3] On August 21, 2025, the District Court for the Southern District of Texas granted Applicants' *ex parte* discovery request under § 1782 for various documents and deposition testimony from Winds, Unite Oil, and Unite Oil's owner, Franklin Ihekwoaba, for use in the same administrative action contemplated by the instant application. *See Alerte Congolaise Pour L'Environnement et al. v. Winds Expl. & Prod., LLC*, No. 25 Misc. 2083, 2025 WL 3074466, at *5 (S.D. Tex. Aug. 21, 2025).

allege that the auction process and the award were "characterized by an extreme lack of transparency and numerous apparent breaches of Congolese and international law." Ndoole Decl. ¶ 11. Specifically, they allege that:

- The Ministry's inclusion of 11 additional oil blocks and three new methane gas blocks without approval and disclosure to the Council of Ministers violated Congolese law. *Id.* ¶ 11(a).
- The nationwide auction of oil and gas blocks was never subject to an environmental and social impact assessment as required under Congolese law for "any government policy, plan, or program that is likely to have significant environmental impacts." *Id.* ¶ 11(b). Applicants contend the absence of such an evaluation may have significant social and environmental ramifications. *See id.* ¶¶ 13–19.
- The oil and gas blocks "overlap with numerous national parks and other protected areas, as well as the territory of Indigenous peoples," including on an island in Lake Kivu; under Congolese law, the DRC is required to allow "everyone to participate in decision making that affects their existence or could have an impact on the environment, from the beginning and throughout the process of implementation. *Id.* ¶ 11(c). The DRC did not hold consultations or other processes "by which affected communities and other stakeholders in the DRC could participate in the decision to auction off the blocks." *Id.*
- Alfajiri, the winner of the Lwandjofu block, lacked the necessary qualifications to submit a bid in the auction because, having been incorporated in January 2022, it could not have submitted three years of accounting records, as required under Congolese law for the bidding process. *Id.* ¶ 11(d).

- Then Minister of Hydrocarbons, Didier Budimbu, was alleged by investigative journalists to have pressured Ministry experts to alter a report to favor Alfajiri, after a government technical committee gave Alfajiri "bottom scores" for failure to submit "vital information such as a work plan or a feasibility study," as required by Congolese law. *Id.* ¶ 11(e). The report, as revised, gave Alfajiri "the highest scores," "rigging the election in Alfajiri's favor." *Id.* Journalists have also reported that a team sent by the DRC to visit Alfajiri in Canada found "a skeleton operation with no official business space." *Id.* ¶ 11(g). They also reported that, two weeks before Alfajiri was announced as the winner of the Lwandjofu block, Alfajiri's chief executive officer was seen with the Minister of Hydrocarbons at a business conference, suggesting possible interference in the auction process. *Id.*
- The Ministry failed to "verify the technical and financial capacity and the registration documents of auction participants prior to selecting the winner," as required by Congolese law. *Id.* ¶ 20. Applicants further allege that the gas blocks have been awarded to companies that lack the requisite qualifications and experience to operate a lake-bed methane extraction in the region. *Id.* ¶¶ 20–21.

**D. Instant § 1782 Application**

On October 27, 2025, Applicants filed an application under 28 U.S.C. § 1782, seeking that Symbion produce documents, and submit to deposition testimony, relating to Symbion's correspondence with DRC officials regarding the methane gas block auction and award. Dkt. 1 ("Application"); Dkt. 1-5 ("Request for Production"); Dkt. 1-6 ("Notice of Deposition").

As to documents, the Applicants submitted the following requests:

Request No. 1: All communication between Symbion Power and the DRC government from 2020 to present, including communications where Symbion Power and/or the DRC government are copied but not the sender.

Request No. 2: All documents shared by the DRC government with Symbion Power relating to the DRC Gas Auction, including (a) invitation to submit a Bid; (b) Bid requirements; (c) descriptions or evaluations of any aspect of the gas blocks; (d) evaluations of the Bids; (e) communications about the application or application process; (f) communication about the auction process; and (g) the official Decrees granting licenses for the Idjwi Block, Makelele Block, and Lwandjofu Block.

Request No. 3: All documents that Symbion Power submitted, or were submitted on Symbion Power's behalf, to the DRC government related to the DRC Gas Auction, including all documents related to their Bid(s) in the DRC Gas Auction.

Request No. 4: All documents on the status of the incorporation in the U.S. and the DRC of Symbion Power, their subsidiaries, or their affiliates, and identities of their Directors and shareholders from 2022 until present.

Request No. 5: All (a) environmental evaluations; (b) environmental and/or social impact assessments; and (c) environmental and/or social management plans, related to proposed methane extraction in Lake Kivu, the Gas Blocks, or to the DRC Gas Auction, including terms of reference and drafts.

Request No. 6: All documents and communications related to site visits conducted by the DRC government or its designees as part of the DRC Gas Auction.

Request No. 7: All documents and communications from, or discussing, meetings or communications with the DRC government.

Request No. 8: All documents relating to any consultations or meetings held by, or done on behalf of, either the DRC government or Symbion Power with communities, Indigenous Peoples, stakeholders, or civil society groups in the DRC regarding the DRC Gas Auction and/or the Gas Blocks.

Request No. 9: Any agreements between Symbion Power and the DRC government in connection with methane extraction at Lake Kivu and/or the DRC Gas Auction process or outcome, including Production Sharing Agreements or Concession Contracts.

Request for Production at 7–8.[4]

[4] The Request for Production identifies two different requests as number "3." *See* Request for Production 8. The Court identifies each request consecutively in their order of appearance in Dkt. 1-5.

As to deposition testimony, Applicants sought testimony by a Symbion representative competent to testify about topics tracking the document requests. Notice of Deposition at 1. These included the DRC auction; Symbion Power's decision to participate in it; Symbion's involvement in the DRC auction; the decision to award the Makelele Block to Symbion; Symbion's environmental and/or social impact assessments—and/or environmental and/or social management plans—related to its blocks; and its plans for methane extraction in Makelele Block. *Id.* at 5–6.

### E. Procedural History

On October 27, 2025, Applicants filed the discovery request pursuant to § 1782, which indicated that they did not seek to proceed *ex parte*. Dkt. 1. On November 5, 2025, the Court ordered Applicants to serve Respondent forthwith. Dkt. 6. On December 1, 2025, after an extension of the service deadline, Applicants reported that counsel for Symbion had agreed to accept service on condition that Symbion's response be due in February 2026. Dkt. 11. On February 16, 2026, Symbion filed an opposition to the Application, Dkt. 17, plus a sworn declaration from Symbion's general counsel, Patrick Omeke, Dkt. 17-1 ("Omeke Decl."). On March 13, 2026, Applicants replied, Dkt. 18 ("Reply"), and filed a declaration from its counsel Tamara Morgenthau, Dkt. 18-1 ("Morgenthau Decl.").

## II. Applicable Legal Standard

### A. 28 U.S.C. § 1782

Under § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." A party making such an application must satisfy three statutory requirements:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (cleaned up)).

"[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004) (cleaned up). Although a district court possesses broad discretion, it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (cleaned up).

Under *Intel Corp. v. Advanced Micro Devices, Inc.*, a court is directed to consider four factors (the "*Intel* factors") when reviewing a § 1782 application:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.

*Mangouras,* 980 F.3d at 97–98 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)). These "factors are not to be applied mechanically," and a district court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

## III. Discussion

### A. Statutory Factors

Applicants contend—and the point appears undisputed—that the first and third statutory requirements under § 1782 are met. *See* Mem. at 15–21; Opp'n at 3–8. Symbion is located in this District, which is also the district in which the § 1782 application was filed. *See* Mem. at 7; *Mees*, 793 F.3d at 297. And Symbion does not dispute that Applicants, ACEDH and APEM, qualify as "a foreign or international tribunal or . . . any interested person." 28 U.S.C. § 1782(a); *see* Mem. at 17; Opp'n at 9–12.

As for the remaining requirement, Symbion disputes that Applicants have shown that the requested discovery "for use" in a foreign or international tribunal. They argue that Applicants have not demonstrated that the foreign proceeding is within "reasonable contemplation" as required under *Intel*. Opp'n at 11.

"In considering whether a contemplated litigation meets the 'for use' requirement, [a court] must ask (1) whether the proceeding is adjudicative in nature; and (2) if the litigation is sufficiently contemplated." *In re Top Matrix Holdings Ltd.*, No. 18 Misc. 465, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) (citing *Intel*, 542 U.S. at 259) (cleaned up).[5] To establish whether an anticipated proceeding is sufficient or "within reasonable contemplation," an applicant must have something more than a "subjective intent" to undertake legal action. *Certain Funds, Accts., and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123–24 (2d Cir. 2015) ("*Certain Funds*"). Such can be evinced through "objective indicium that the action is being contemplated" at the time of filing the § 1782 petition. *Id.* at 123. The lawsuit need not be "pending or even imminent in order to meet the 'for use' requirement." *IJK Palm LLC v. Anholt*

[5] It is undisputed that the proceeding contemplated by the Applicant would be adjudicative.

*Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022) (quoting *Intel*, 542 U.S. at 258–59). There is no exact formula as to "what precisely an applicant must show to establish" reasonable contemplation, but, the Second Circuit has held, an applicant must provide "some concrete basis from which [a court] can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 677 (citation omitted). In resolving this issue, the Court is to weigh "Congress's desire that broad discovery be available for parties involved in international litigation . . . against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse." *In re Certain Funds, Accts. and/or Inv. Vehicles, Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds,* 798 F.3d at 113; *see also In re Sargeant,* 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) ("Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it." (citation omitted)); *Deposit Ins. Agency v. Leontiev*, No. 17 Misc. 414, 2018 WL 3536083, at *9 (S.D.N.Y. July 23, 2018) ("[C]ourts should be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the claims they have already made.").

Here, Applicants have supplied ample "objective indicia" that they are reasonably contemplating legal action in the DRC. They have identified the legal arguments that they intend to make, evidence that they envision offering, the tribunal where the case would be brought, and their counsel, and they have satisfactorily demonstrated their standing to bring the contemplated action under Congolese law. Ndoole Decl. ¶¶ 3–28; Mudodosi Decl. ¶¶ 6–12; Dkt. 18-2 ("Second Mudodosi Decl.") ¶¶ 4–8. They have also written and met with Congolese authorities to acquire the official decrees allocating the gas blocks and contracts that they seek to cancel, a

necessary predicate to filing an administrative complaint in the DRC. Ndoole Decl. ¶¶ 22–23, 29; Mudodosi Decl. ¶¶ 8,10. These indicia satisfy the "for use" requirement. *See, e.g.*, *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *4 (finding that "sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the ['for use'] statutory requirement"); *In re Furstenberg Fin. SAS*, No. 18 Misc. 44, 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (similar); *In re Mutabagani*, No. 22 Misc. 299, 2023 WL 2811621, at *3 (S.D.N.Y. Apr. 6, 2023) (similar).

Indeed, much the same showing by these Applicants was recently found to meet the "for use" requirement by a federal district court in the Southern District of Texas, which granted Applicants' *ex parte* § 1782 petition to pursue discovery to other winners of the Lake Kivu auction, Unite Oil, Unite Oil's owner Franklin Ihekwoaba, and Winds. Dkt. 18-1, Ex. 1 ("Winds Litigation") (attaching the court's opinion in *Alerte Congolaise Pour L'Environnement v. Winds Expl. & Prod., LLC*, No. 25 Misc. 2083, 2025 WL 3074466 (S.D. Tex. Aug. 21, 2025)). That Applicants pursued discovery in that action, too, evidences their genuine intention to pursue the anticipated foreign proceeding.

Opposing this outcome, Symbion cites *In re Novalpina Cap. Partners I GP S.À.R.L.*, No. 23 Misc. 25 (PAE), 2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025), but that decision is inapposite. There, this Court denied a § 1782 discovery request where the applicant conceded that it could not "make a determination as to whether it has a viable civil fraud claim under Luxembourg law" without the requested discovery materials. *Id.* at *21. There is no such uncertainty about the feasibility of bringing the claim anticipated here. Plaintiffs have identified

the claims they anticipate bringing.[6] *Novalpina* is further inapposite in that the petitioner could not provide a timeline for filing the claim or providing a draft complaint, *see id.* at *23, whereas Applicants here have taken an array of steps towards such an action, including arranging meetings with DRC officials, pursuing the § 1782 discovery in Texas, and requesting paperwork necessary for filing an administrative action. Mudodosi Decl. ¶ 8; Ndoole Decl. ¶ 29; Winds Litigation. And they have submitted multiple sworn declarations from counsel outlining their claims and the factual basis for them, and none of these is dependent on this application's success. *See, e.g.*, Ndoole Decl. ¶¶ 3–28; Mudodosi Decl. ¶¶ 6–12; Second Mudodosi Decl. ¶¶ 4–8. And Applicants aver that they intend to file "as soon as reasonably possible." Ndoole Decl. ¶¶ 24, 29. The Court therefore finds that the discovery request here, far from being a fishing expedition, is an attempt to burnish an already developed legal claim to increase Applicants' "chances of success [in the administrative lawsuit]." *Mees*, 793 F.3d at 299.

Accordingly, Applicants have satisfied § 1782's "for use" requirement.

**B. *Intel* Factors**

The Court turns next to the three disputed *Intel* factors.[7]

**1. Whether Symbion Is a "Participant" in the Foreign Proceeding**

The first *Intel* factor strongly favors granting the Application.

That factor inquires as to whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce the evidence [sought]." *Id.* By contrast, "nonparticipants in the foreign proceeding may be outside the

---

[6] Applicants identify, for example, violations of Article 36 of Law No. 015/012 of 1 August 2015 on the General Hydrocarbons Regime and violations of Article 19 of Law No. 11/009 of 9 July 2011 on the Fundamental Principles of Environmental Protection. Ndoole Decl. ¶¶ 11a-11b.
[7] The second *Intel* factor is undisputedly met. *See* Mem. at 19; Opp'n at 12–15; Reply at 7.

foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* Courts thus disfavor § 1782 petitions that "for all intents and purposes . . . seek[] discovery from . . . their opponent in the [foreign] litigation." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004).

Here, Symbion, a U.S.–based company, is not a contemplated defendant in the foreign proceeding. That legal proceeding, as foreshadowed by Applicants, will be brought against the DRC, not Symbion. Nor does any party contend that Symbion would be a necessary party to the administrative action. Further, as a U.S.–based entity, Symbion is not subject to the jurisdiction of the DRC, and a Congolese court may not order production from it. Ndoole Decl. ¶ 33. Any evidence that Symbion may possess thus appears to be "unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Nor has Symbion identified a procedural mechanism through which it could "be compelled by the [DRC] court to independently produce documents" as a non-DRC entity. *See In re Pidwell*, 2022 WL 192987, at *5. These facts favor the discovery request.

Symbion makes three counterarguments—none persuasive.

First, Symbion argues that, although it would not formally be party to the administrative proceeding, Symbion would have an interest in it, given the possibility that its DRC-based affiliate RED might be drawn into that proceeding. Opp'n at 13. But having an interest in a foreign proceeding's outcome does not make Symbion a real party in interest or a participant in it for purposes of the first *Intel* factor. *See In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 250 (S.D.N.Y. 2018) ("[T]he mere possibility that a third party may ultimately be named in the litigation does not justify denying a third-party subpoena pursuant to Section 1782." (citation omitted)).

Second, Symbion argues that many documents requested are not in the United States and instead "DRC court's jurisdictional reach," because many requests call for records of communications with officials in the DRC or are in the "custody and control" of RED. Opp'n at 9–11, 13–15. But that a foreign affiliate may have some of the same documents as the U.S. entity subject to a § 1782 request does not disfavor the request. *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 (permitting § 1782 discovery where U.S.–based company and its foreign affiliate held similar documents, on grounds that, so long as the party from whom discovery was sought is not a participant in the foreign proceeding, the first *Intel* factor favors allowing the discovery); *In re Pidwell*, 2022 WL 192987, at *5 (similar). And Applicants identify reasons to doubt that all Symbion-held materials are located in the DRC, as Symbion is a U.S. company and "has not claimed a DRC presence." Reply at 9. Some materials—for example, records regarding Symbion's corporate structure, and internal documents regarding Symbion's participation in the auction process such as meeting notes and technical assessments—are relatively unlikely to be held in, or solely in, the possession of DRC officials or RED, Symbion's DRC-based partner. *See id.* at 9–10. Symbion has not shown that the subpoena solely reaches documents outside the United States and within the DRC court's jurisdictional reach.

Moreover, as to the documents in the "custody and control" of RED, under § 1782, these are not categorically off-limits. The Second Circuit permits "extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control." *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) ("[T]he location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782."). Symbion plausibly has—and has not shown that it lacks—control over its affiliate and principal business partner

RED, to wit, the "right, authority, or practical ability to obtain [its] documents." *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023) (cleaned up). Because, based on the record at hand and rational inferences from it, Symbion "has access and the practical ability to possess documents not available to the party seeking them, production may be required." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007).

Third, Symbion faults Applicants because they "did not exhaust, or even begin, their discovery options in the foreign forum in the DRC before invoking § 1782 in the United States." Opp'n at 14. But a party seeking discovery pursuant to § 1782 need not first seek discovery from the foreign tribunal. *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("[R]equiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 as articulated in the legislative history."); *see also Mees*, 793 F.3d at 303 (exhaustion requirement "finds no support in the plain language of [section 1782] and runs counter to its express purposes" (citing *In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("*Metallgesellschaft AG*")).

**2. Whether the Application Circumvents DRC Proof-Gathering Restrictions**

The third *Intel* factor also favors the Application.

Under it, courts must "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "'[P]roof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail* to *facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n.20 (emphasis in original) (cleaned up).

However, § 1782 "contains no foreign-discoverability requirement." *Id.* Indeed, "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel*, 542 U.S. at 260. Thus, to demonstrate circumvention, a respondent, *e.g.*, Symbion, must show that Applicants have behaved in bad faith, abusing § 1782. *See In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d at 251.

Symbion has not supplied proof that the Applicants have attempted, in bad faith, to circumvent DRC legal procedures. Neither of its arguments to this effect is persuasive.

First, it argues that the Applicants, in seeking to pre-filing discovery, are "bypassing the DRC's structured administrative review process." Opp'n at 10, 14. "[T]he proper course," it states, was "to file the action first, then seek relevant documents from the government agency that conducted the action." *Id.* Second, it claims, "the documents sought contain confidential information that would normally be protected during a government contracting process." *Id.*

The first argument fails because, under precedents applying § 1782, the absence in the DRC of a mechanism for pre-filing discovery is not a "proof-gathering restriction[]." *Mees*, 793 F.3d at 303 n.20. It is properly classed as a procedural rule governing the timing of investigation of claims, not as a rule establishing a "privilege" that Symbion may invoke as a shield against production. *Id.*; *compare In re Tiberius Grp. AG*, No. 19 Misc. 467, 2020 WL 1140784, at *5 (S.D.N.Y. Mar. 6, 2020) (holding that Nigerian law, which "does not empower parties to investigate their claims through non-party subpoenas without judicial oversight and assistance," imposes a procedural limitation rather than a prohibition on the requested discovery, and as such the fact the discovery "would not have been granted" in Nigeria was "not . . . sufficient on [its] own to warrant denial of the application" under the third *Intel* factor (citation omitted)), *and In re*

*O'Keeffe,* 650 F. App'x 83, 85 (2d Cir. 2016) (summary order) (affirming grant of § 1782 application, where "[t]he mere fact that the discovery sought here might not be obtainable under Hong Kong law does not, by itself, suggest that [the] application is an attempt to circumvent foreign proof-gathering restrictions" (citation omitted)), *with In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 304 (S.D.N.Y. 2020) (finding third *Intel* factor to weigh against § 1782 application because petitioner was seeking information that "would be shielded from disclosure in the United Kingdom based on Baram's reporter's privilege and privilege against compelled self-incrimination" (cleaned up)).

The second argument fails because Symbion's claim that the documents are confidential and legally off limits to discovery is conclusory, both as to the character of the records at issue and the existence of such a privilege. Symbion's claim to this effect is far short of "authoritative proof" that allowing the subpoena would circumvent a prohibition in the DRC. *Metallgesellschaft AG*, 121 F.3d at 80. Granting that claim would require the Court impermissibly to "speculate . . . whether [Symbion] enjoys a privilege under [Congolese] law entitling [it] to refuse to comply with a discovery order under § 1782." *Id.*

The third *Intel* factor accordingly favors granting the Application.

### 3. Whether the Application Is Unduly Intrusive or Burdensome

The fourth *Intel* factor inquires whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. District courts are to "assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. As the Second Circuit has stated, where a request is overbroad or unduly burdensome, the proper outcome may entail granting a tailored request, rather than denying the application outright:

> it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright. Thus, to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery.

*Id.* (cleaned up).

A party resisting discovery on this ground "has the burden of showing specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden." *In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (quoting *Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012)). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *In re Vale S.A.*, No. 20 Misc. 199, 2021 WL 311236, at *3 (S.D.N.Y. Jan. 29, 2021) (quoting *Lindsey v. Butler*, No. 11 Civ. 9102, 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017)).

Symbion makes two arguments implicating this *Intel* factor. It contends the discovery request is overbroad insofar as it seeks "all documents and all communications over a six-year period." Opp'n at 11 (emphasis omitted). And it argues that the discovery would disclose "protected intellectual property, trade secrets, and other competitively sensitive information" of YW Galil Engineering LTD ("Galil"), an Israeli engineering company that was part of the bidding consortium that resulted in the awarding of the Makelele Block, and that such would cause "irreparable harm to the [Galil] and force [it] to seek a protective order, an expensive and unduly burdensome task." *Id.*; *see also* Omeke Decl. ¶ 7.

As to the first objection, Symbion is persuasive that certain requests within the subpoena appear to sweep too broadly. Document request No. 1, as framed, would encompass all

communications between Symbion and the DRC government, irrespective of subject matter. *See* Requests for Production at 8. And document request No. 4 and deposition topic No. 10 appear to pick up personnel records and information unrelated to Symbion's involvement in the DRC gas auction and subsequent award. *Id.*; Notice for Deposition at 6. But these deficiencies can be cured by narrowing the scope of the requests. *See Mees*, 793 F.3d at 302; *see also In re SBK ART LLC*, No. 24 Misc. 147 (PAE) (RFT), 2025 WL 1537474, at *8 (S.D.N.Y. May 30, 2025) ("[T]o the extent Akin seeks to make discrete claims as to foreign privilege law, it may pursue these by including these in a privilege log identifying assertedly privileged subsets of the discovery. That some discovery sought may prove privileged does not support an outright denial of relief."); *In re Hornbeam Corp.*, 722 F. App'x 7, 11 (2d Cir. 2018) (summary order) (district court did not abuse its discretion where it granted applicant's § 1782 discovery request but "narrow[ed] the range of documents initially sought in the § 1782 application and later enter[ed] a protective order covering certain responsive materials").

The Court therefore limits document request Nos. 1 and 4, and deposition topic No. 10, to clarify that these do not reach records and personnel information wholly unrelated to the 2022 auction. And, to the extent that further burden issues later arise that the parties cannot resolve by the meet-and-confer process contemplated by the Federal Rules, Symbion retains the right to challenge particular demands by moving to quash under Federal Rule of Civil Procedure 45(c)(3). *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order).

As to the second objection, Symbion has shown that it is possible that production could implicate its confidential intellectual property and trade secrets. The declaration from its general counsel, Patrick Omeke, attests that Symbion is under "contractual obligation not to disclose

[Galil's intellectual property and other trade secrets] to third parties and has been put on notice that disclosure of said information would irreparably harm Galil's competitive business advantage." Omeke Decl. ¶ 7. "The existence of a trade secret . . . is a fact-specific question to be decided on a case-by-case basis." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 68 F.4th 792, 801 (2d Cir. 2023). "[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 *cmt.* b, at 5 (1939)). Omeke's declaration is persuasive that the materials sought could encompass trade secrets and other intellectual property.

These concerns, however, can be addressed through standard discovery measures. Under Rule 26(c), a district court can enter a protective order, which may "protect[] a party from disclosure of information claimed to be privileged or confidential" or limit the dissemination or use of such information to the extent disclosed. *Penthouse Int'l Ltd. v. Playboy Enter., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981). Such an order is the proper response here. *See* Fed. R. Civ. P. 26(c)(1)(G); *see, e.g., In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d at 252 (permitting a § 1782 application to proceed in such a fashion serves to "mitigate any burdensomeness concerns" and "further the 'twin aims' of the statute while encouraging a surgical approach to discovery"); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("Of course, in domestic civil litigation, courts may issue protective orders that restrain parties from using the discovery for other purposes, including as evidence in other litigations. So too may district courts in Section 1782 cases, as indeed they often do and as the district court did in this case." (cleaned up)).

The fourth *Intel* factor favors granting the Application, as pruned herein, and subject to a protective order with safeguards for confidential or trade secret information.

**CONCLUSION**

For the foregoing reasons, the Court grants the Application, subject to the modifications herein of document request Nos. 1 and 4, and deposition topic No. 10. The Court further directs the parties to meet and confer, and file a proposed protective order on the docket of the case within one week. The Court directs Symbion to produce all responsive materials within four weeks of this Order, and directs the parties to arrange promptly thereafter for the deposition sought by the Application. The parties are to notify the Court once compliance with the Application is complete, at which point the Court will close this case.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: July 27, 2026
New York, New York